UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BERNIECE NYARKO                                                     Plaintiff

v.                                                    Civil Action No. 3:25-cv-186-RGJ

BULLITT COUNTY BOARD OF                                            Defendant
EDUCATION

* * * * *

**MEMORANDUM OPINION & ORDER**

Plaintiff Berniece Nyarko ("Nyarko") moves for leave to file an amended complaint pursuant to Fed. R. Civ. P. 16(b)(4). [DE 17]. Defendant Bullitt County Board of Education ("BCPS") responded. [DE 23]. Nyarko has not replied, and the time to do so has passed. Briefing is complete and the matter is ripe. For the reasons below, the Court **GRANTS** Nyarko's motion to amend [DE 17].

## I.    BACKGROUND[1]

On March 12, 2025, Nyarko filed a complaint against BCPS in Bullitt Circuit Court asserting federal and state-law claims related to her employment with BCPS. [DE 1-1]. She alleges that she was recruited for and accepted a position as Title IX coordinator for BCPS on the understanding that she would be given the responsibilities and pay typically associated with that role. [*Id.* at 11–12]. She maintains that she was nonetheless "classified and paid as a school social worker without her consent" for three years until she discovered the discrepancy in June 2024. [*Id.* at 11]. Upon discovery of the discrepancy, she reported it to payroll, finance, the HR director, and

---

[1] When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). Because the Court considers whether a proposed amended complaint would be futile under the motion to dismiss standard, the Court accepts the facts in the proposed amended complaint as true for the present motion.

her supervisor Troy Wood ("Wood"). [*Id.*]. Following her request, BCPS allegedly retaliated against Nyarko by freezing her out of investigations and notifications related to her role. [*Id.*]. Nyarko is a black woman and alleges that she was discriminated against on the basis of her sex and race. [*Id.* at 11–14].

Nyarko's original complaint asserts seven claims against BCPS: Title IX violation (Count 1); retaliation under KRS 61.102 (Count 2); race and sex discrimination under Title VII (Count 3); retaliation under Title VII (Count 4); violation of the Equal Pay Act (Count 5); fraudulent misrepresentation (Count 6); and breach of contract (Count 7). [*Id.* at 11–17]. BCPS is the sole Defendant named in the original complaint.

BCPS removed the case to this Court on April 2, 2025. [DE 1]. Eight days later, BCPS moved for partial dismissal of Counts 3, 4, and 6. [DE 5]. On May 7, 2025, the Court granted the motion in part, dismissing Count 6 because BCPS is a state government agency entitled to governmental immunity under Kentucky law, but denying the motion as to Counts 3 and 4. [DE 7 at 54–55]. On June 20, 2025, the Court entered a scheduling order, setting a November 3, 2025 deadline to amend pleadings or add parties. [DE 11 at 65]. The order also established expert discovery deadlines of January 2, 2026, for Nyarko and March 6, 2026, for BCPS. [*Id.*]. The scheduling order provided that "[n]o extensions of the deadlines set in this order . . . shall be granted unless an appropriate motion is filed prior to expiration of the deadline in question, and upon a showing of good cause beyond the control of counsel in the exercise of due diligence." [*Id.* at 70].

On September 10, 2025, the parties filed a joint status report stating that they had exchanged written discovery. [DE 12]. On October 28, 2025, Nyarko's counsel emailed a draft amended complaint to BCPS's counsel, indicating his intent to move for leave to file the amended

complaint before the November 3 deadline. [DE 17-1]. Yet Nyarko's counsel failed to file a motion for leave to amend or seek an extension of time before the deadline passed. On January 30, 2026, the parties filed a joint status report explaining that Nyarko had produced some discovery to BCPS and was in the process of providing written responses to BCPS's written discovery requests. [DE 15 at 76]. The report explained that the parties intended to schedule depositions once written discovery had concluded. [*Id.*] It also noted that, on January 29, 2026, Nyarko's counsel provided to BCPS a proposed amended complaint adding additional claims and parties, to which BCPS objected. [*Id.*].

On February 3, 2026, Nyarko moved for leave to amend the complaint. [DE 17]. She seeks to add eight individual defendants: BCPS Superintendent Jesse Bacon ("Bacon"); Director of Human Resources Althea Hurt ("Hurt"); Director of Finance Lisa Lewis ("Lewis"); former Assistant Superintendent Becky Sexton ("Sexton"); Director of Safe and Drug Free Schools Sarah Smith ("Smith"); former Director of Pupil Personnel Ruth Esterle ("Esterle"); Chief Operations Officer Wood; and Director of Pupil Personnel Steve Smallwood ("Smallwood"). [DE 17-1 at 104]. The proposed amended complaint also seeks to add several claims: Count II for fraudulent inducement against all new defendants; Count III for promissory estoppel against Bacon, Lewis, Hurt, Sexton, Smith, Esterle, and Wood; Count III for breach of contract against Bacon, Lewis, and Hurt[2]; Count VIII for negligence or gross negligence against Bacon, Sexton, Hurt, and Lewis; Count IX for negligent supervision against Bacon; Count X for negligent misrepresentation against Bacon, Sexton, and Esterle; Count XI for Civil Conspiracy against all individual defendants; and Count XII for tortious interference with a contract against Bacon, Lewis and Hurt. [*Id.* at 122–38].

---

[2] The amended complaint asserts two separate claims titled "Count III." [DE 17-2 at 126, 128].

Counts IV, V, VI, and VII assert the same claims against BCBS found in the original complaint. In total, the proposed amended complaint asserts eight new claims against eight new defendants.

The proposed amended complaint raises new factual allegations and attaches additional documents related to Nyarko's employment. It asserts that BCPS advertised two available positions: a "Title IX Coordinator/Supervisor of Social Services" and a "school social worker." [DE 17-1 at 106]. After interviewing for a school social worker position with Smith, Nyarko was asked by Sexton to consider a Title IX role. [*Id.* at 107]. The Title IX job listing stated that the position included administrative authority, including Title IX coordination and supervision of all school social workers. [*Id.*]. Nyarko then interviewed for the Title IX position with Esterle, Sexton, and a panel of school social workers—all white women—and was thereafter offered the position by Kelsey Bailey, a direct report of HR director Hurt. [*Id.* at 107–08]. Due to the marketing of the position, the BCPS organization chart, and the descriptions of the position given by Sexton, Smith, Esterle, and Hurt, Nyarko believed the Title IX position to be supervisory. [*Id.* at 108].

After she was hired, however, BCPS director of finance Lewis classified Nyarko in payroll as a social worker/investigator. [*Id.* at 110]. Over the next several years, Nyarko was given the compensation and responsibilities of a social worker, while COO Wood operated as the true Title IX coordinator. [*Id.* at 111–15]. Nyarko sought clarity about her compensation and duties from Esterle, Smallwood, Wood, and Hurt, but they were unhelpful or dismissive. [*Id.* at 115]. In retaliation for raising her concerns, Nyarko was left out of professional conferences and Title IX trainings. [*Id.* at 116]. In June 2024, Nyarko learned that before she applied for the Title IX position, Superintendent Bacon had stripped the position of its supervisory duties and given "the desirable functions (and money) from her position to his white friends." [*Id.* at 118, 121].

Nyarko raised this issue with Lewis, Hurt, and Wood, and her pay was increased by $21,000 one week later. [*Id.* at 119]. Wood "attempted to pressure [Nyarko] into signing paperwork falsely certifying she had served as Coordinator all along," and when Nyarko refused, she was given a negative performance evaluation. [*Id.* at 120]. Nyarko eventually filed a complaint with the United States Department of Education Office of Civil Rights ("OCR"). [*Id.* at 121]. When Nyarko refused to comply with Wood's request that she "sign off on BCPS's civil rights data," she was placed on a "corrective action plan" in April 2025. [*Id.* at 121–22]. Finally, on June 30, 2025—one day before she would have obtained tenure—BCPS terminated her employment. [*Id.* at 122]. Nyarko maintains that BCPS and Bacon hired her simply as a token black woman to serve as Title IX coordinator only on paper, while denying her the actual authority and pay of a Title IX coordinator.

Recognizing that Nyarko's motion for leave to amend would likely require amendment of the expert deadlines in the scheduling order, the magistrate judge directed Nyarko to separately file a motion for extension of those deadlines. [DE 19]. Nyarko filed the motion to extend the deadline for expert witness disclosure, [DE 18], which was unopposed by BCPS [DE 20]. Accordingly, the Court granted the motion to extend the expert disclosure deadline and set new deadlines of March 2, 2026 for Nyarko and May 2, 2026 for BCPS. [DE 22 at 480]. BCPS thereafter responded to Nyarko's motion for leave to amend the complaint, arguing that Nyarko failed to establish good cause for failure to comply with the November 3, 2025 deadline, and that amendment would be futile. [DE 23].

## II.      STANDARD

"Seeking leave to amend a complaint after the scheduling order's deadline implicates two Federal Rules of Civil Procedure, Rule 15 and Rule 16." *Carrizo (Utica) LLC v. City of Girard*,

*Ohio*, 661 F. App'x 364, 367 (6th Cir. 2016). Rule 15 provides that a plaintiff may amend his pleading with the court's leave, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'"). But when the deadline established by the court's scheduling order has passed, "a plaintiff first must show good cause under Rule 16(b) [of the Federal Rules of Civil Procedure] for failure earlier to seek leave to amend" and the court "must evaluate prejudice to the nonmoving party 'before a court will [even] consider whether amendment is proper under Rule 15(a).'" *Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)) (finding that the district court did not abuse its discretion by denying motion to amend filed after discovery and dispositive motion deadlines). As a result, the court only examines the standard factors governing amendment of complaints under Rule 15(a) if the good cause provision of Rule 16(b) is met.

Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In determining whether the plaintiff has shown good cause under Rule 16(b) for failure to seek leave to amend before the deadline has passed, the court considers whether: (1) the plaintiff has exhibited diligence in trying to meet the scheduling order's requirements; and (2) defendant is prejudiced by amendment. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). "If a party is delayed in discovering the basis for amending its pleadings due to circumstances beyond its control, it may use that delay as a basis for arguing that a Rule 16(b) order deadline should be extended." *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-CV-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007) (citing *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1173–74 (9th Cir. 2007)). Prejudice to the non-moving party is a relevant

6

consideration, "but the main focus should remain on the moving party's exercise of diligence." *Cooke v. AT&T Corp.*, No. 2:05-CV-374, 2007 WL 188568, at \*2 (S.D. Ohio Jan. 22, 2007) (citing *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005)).

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995) (citing *Roth Steel Prod. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983)). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). An action may be dismissed under Fed. R. Civ. P. 12(b)(6) if the complaint fails to state a claim upon which relief can be granted. To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64 (2007)). The

7

moving party has the burden of proving that no claim exists. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

### III.    DISCUSSION

A.  Good Cause under Fed. R. Civ. P. 16

 *1. Diligence*

Nyarko argues that she demonstrated diligence in her attempts to meet the Court's November 3, 2025 deadline to amend the complaint or join additional parties. [DE 17 at 83–84]. Although she "possess[ed] the factual basis for the proposed claims before the amendment deadline, and made good faith efforts to complete an amended complaint" before the deadline, she maintains that she could not "convert the newly discovered facts into an amended complaint" before the November 3 deadline. [*Id.* at 84]. Nyarko states that she only learned about the employee payroll classification process after speaking with Kelsey Bailey in October 2025. [*Id.*] Only after that conversation could she conclude that Lewis misclassified Nyarko without her knowledge or consent. [*Id.*]. Furthermore, "based on the documents [Nyarko] took with her from BCPS, it was unclear for months if the individual defendants named in the amended complaint were simply negligent, or intentionally deceitful," and it took months of reading and re-reading documentation to figure this out. [*Id.*]. She asserts that she was unable to piece together the operative facts until she reviewed BCPS's discovery and had conversations with former BCPS employees Tom Brilhart ("Brilhart"), Kelsey Riley ("Riley"), and Susan Bibelhauser ("Bibelhauser"). [*Id.* at 85]. BCPS responds that Nyarko was given responses to her written discovery requests on or before August 29, 2025, sixty-six days before the amendment deadline. [DE 23 at 487]. And while Nyarko circulated a draft amended complaint before the deadline, she failed to file the amended complaint or move for an extension of time before the deadline. [*Id.*]. Finally, Nyarko offers no explanation

why she could not have interviewed the three former BCPS employees earlier, nor does she explain why sixty-six days was inadequate to review the BCBS discovery. [*Id.* at 488].

Nyarko's proposed amended complaint and accompanying motion for leave to amend reveal that Nyarko was aware of the facts underlying the proposed amended complaint prior to the November 3 deadline. First, Nyarko admits that she "did possess the factual basis for the proposed claims before the amendment deadline[.]" [DE 17 at 84]. Nyarko purports to explain why she could not consolidate those facts into an amended complaint by the deadline; however, she offers no explanation as to why she failed to move for an extension of time before that deadline expired. Second, Nyarko admits that she took documents with her when she left BCPS in June 2025 and that the allegations in the amended complaint are based—at least in part—on those documents. [*Id.*]. Nyarko explains that it took months to review those documents, interview witnesses, and determine the extent of individual liability. [*Id.*]. Crucially, however, she fails to explain why she did not at least seek an extension of time before the amendment deadline.

Even so, it is obvious that Nyarko's counsel has continuously worked to review discovery material, conduct witness interviews, and identify the appropriate new claims and defendants. For example, Nyarko states that she conducted interviews with BCPS personnel Riley, Bibelhauser, Brilhart, and Bailey. During the October 2024 discussion with Bailey, Nyarko learned about the process for onboarding and classifying new employees, which alerted Nyarko that Lewis misclassified Nyarko without her knowledge or consent. Moreover, while the original complaint was filed in March 2025, Nyarko was not terminated from her position with BCPS until June 30, 2025. [DE 17-2 at 122]. In other words, it was not until July 2025 that Nyarko's claim for wrongful termination even became possible. Finally, Nyarko's counsel made BCPS aware of her intent to amend promptly upon discovering the information on which the amended complaint is based.

9

While counsel should have moved for an extension, he nonetheless took steps to ensure opposing counsel would not be surprised by an amended complaint.

Nyarko's motion to amend reflects that her counsel may have simply been under the mistaken impression that he could not move for an extension of time to file an amended complaint. For example, Nyarko explains that she notified BCPS of her intent to amend on October 28, 2025, but that she needed more time to ensure the accuracy and thoroughness of the amended complaint, which she could not do before the November 3 deadline. [DE 17 at 85]. Because "Rule 16 does not require counsel to file an incomplete or speculative pleading merely to meet a deadline," Nyarko waited to amend until she possessed a more complete pleading. [*Id.*]. Counsel could have—and should have—moved for an extension of time to file an amended complaint before the November 3 deadline, particularly since he knew an amended complaint would be forthcoming. Nevertheless, this failure was counsel's sole misstep, resulting not from a lack of diligence, but from a mistaken belief that he could not move for an extension. Counsel was otherwise diligent in gathering and synthesizing information for the amended complaint, translating that information into discrete causes of action, and notifying BCPS of his intent to amend. The Court will not penalize Nyarko for her counsel's oversight, particularly when counsel has otherwise demonstrated diligence.

### 2. *Prejudice*

Nyarko argues that prejudice here would be minimal given that litigation is in its early stages and BCPS was on notice of the forthcoming amended complaint as early as October. [DE 17 at 86]. BCPS responds that it would be prejudiced notwithstanding the fact that this case is in its early stages because discovery has been ongoing for more than seven months, and the addition of claims and defendants may require an extension of the discovery deadline. [DE 23 at 488–89].

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge*, 281 F.3d at 625 (internal quotation marks omitted) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). Thus, "courts consider the extent of prejudice to the nonmoving party only if the movant proceeded diligently, and then only to ascertain whether there exist 'additional reasons to deny a motion.'" *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also Peterson Motorcars, LLC v. BMW of N. Am., LLC*, No. 3:19-CV-277-DJH-RSE, 2020 WL 7034571, at *3 (W.D. Ky. Nov. 30, 2020) ("The Court only considers potential prejudice to the nonmovant, however, if the parties acted diligently.").

Here, the Court has found that Nyarko's counsel proceeded diligently in gathering the information necessary to file a thorough amended complaint. There would also be minimal prejudice to BCPS in allowing Nyarko to amend. First, BCPS was aware of Nyarko's intent to amend in October 2025, prior to the deadline, and the claims in the amended complaint arise from the same general set of facts as the original. Second, discovery does not close until July 2026, and dispositive motions are not due until September 2026. [DE 11 at 65–66]. Thus, allowing the amendment would not require reopening discovery, nor would it require BCPS to re-file motions for summary judgment. This case is therefore distinguishable from cases where prejudice was found. *See, e.g.*, *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (finding prejudice to defendants when "discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed"); *Com. Benefits Grp., Inc.*, 326 F. App'x at 376 (affirming district court's denial of leave to amend when "[t]he case ha[d] already progressed past the dispositive discovery deadline and the original filing deadline for dispositive motions);

11

*Leary*, 349 F.3d at 909 (holding that district court did not abuse its discretion when it determined that plaintiffs failed to show good cause to amend complaint after dispositive motion deadline). Finally, Nyarko's motion to amend was filed only three months after the deadline, which further distinguishes this case from those in which the court found that leave to amend would prejudice defendants. *See, e.g.*, *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (affirming district court's denial of leave to amend when plaintiff sought amendment nine months after the scheduling order deadline); *Overall v. Oakland Cnty.*, No. 20-12869, 2022 WL 22629044, at *2 (E.D. Mich. Sept. 27, 2022) (finding that allowing plaintiff to amend her pleadings fourteen months after the deadline would "prejudice Defendants and delay the proceedings").

The Court therefore concludes that Nyarko has demonstrated good cause to modify the scheduling order under Rule 16(b) and will next address whether leave to amend is appropriate under Rule 15(a).

B.  15(a) Leave to Amend

Nyarko argues that justice requires granting leave to amend under Rule 15(a). First, she maintains that the three-month gap between the amendment deadline and the motion to amend was not "undue." [DE 17 at 88]. Next, she notes that there is no evidence of bad faith and, given that this is her first amendment, no repeated attempt to cure deficiencies. [*Id.* at 89]. Regarding futility, she states that "[d]epositions still need to be taken in order to flesh out defenses, and test theories, but the new claims in the Amended Complaint are expected to survive a motion to dismiss." [*Id.*].

BCPS argues that governmental immunity bars Nyarko's official capacity claims against the new defendants. [DE 23 at 490]. BCPS notes that the amended complaint directs that service on the new defendants should be made by serving the BCPS superintendent, suggesting that these claims are asserted against the new defendants only in their official capacities. [*Id.*]. Accordingly,

12

those defendants are entitled to "the same sovereign immunity as the governmental agency." [*Id.*]. Next, BCPS argues that even if Nyarko asserts individual capacity claims, the claims are barred by qualified official immunity because the claims against the new defendants all involve discretionary functions. [*Id.* at 491–92].

First, there is no undue delay, lack of notice to the opposing party, bad faith by Nyarko, or repeated failure to cure deficiencies, and BCPS does not argue otherwise. In opposing the motion to amend, BCPS only argues only that amendment would be futile due to governmental immunity or qualified official immunity. The Court therefore limits its discussion of futility to these grounds.

"[G]overnmental immunity is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency." *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001) (internal quotation marks omitted) (quoting 57 Am. Jur. 2d, Municipal, County, School and State Tort Liability, § 10 (2001). "Governmental immunity extends to state agencies that perform governmental functions (i.e., act as an arm of the central state government) and are supported by money from the state treasury." *Autry v. W. Kentucky Univ.*, 219 S.W.3d 713, 717 (Ky. 2007) (citing *Yanero*, 65 S.W.3d). Under the doctrine of governmental immunity, a "state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function." *Yanero*, 65 S.W.3d at 519. Under Kentucky law, "[a] board of education is an agency of state government and is cloaked with governmental immunity[.]" *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). Thus, a board of education "can only be sued in a judicial court for damages caused by its tortious performance of a proprietary function, but not its tortious performance of a governmental function, unless the General Assembly has waived its immunity by statute." *Id.*

"'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions." *Yanero*, 65 S.W.3d at 521. If a state agency is deemed to have governmental immunity, its officers or employees "are afforded the same immunity" when sued in their official capacities. *Id.* at 521–22; *see also Autry*, 219 S.W.3d at 717. "But when sued in their *individual* capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Id.* at 522 (emphasis added). The qualified immunity defense applies to the negligent performance of "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* at 522 (internal citation omitted). On the other hand,

> an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.

*Id.* (citing *Franklin County v. Malone*, 957 S.W.2d 195, 201 (Ky. 1997)). Thus, qualified immunity depends "on the function performed" and whether the official acted in "good faith." *Id.* at 521–22.

While the amended complaint fails to explicitly specify whether the new defendants are sued in their official or individual capacities, it repeatedly asserts that the new defendants "individually" committed the alleged acts, and frequently references the "individual defendants." For example, Count II asserts a claim for fraudulent inducement against "all individual Defendants" and alleges that "the individual Defendants . . . individually, and collectively, misrepresented to the Plaintiff that she would be hired as the Title IX Coordinator/Supervisor[.]" [DE 17-2 at 124]. Count III for promissory estoppel is brought against Bacon, Lewis, Hurt, Sexton, Smith, Esterle, and Wood "individually." [*Id.* at 126]. Count III for breach of contract is asserted

14

against the "individual defendants" Bacon, Lewis, and Hurt. [*Id.* at 128]. Counts XI for civil conspiracy and XII for tortious interference with a contract likewise specify that they are brought against the "individual defendants" and "individually," respectively. [*Id.* at 135, 137]. While Counts VIII, IX, and X do not use the word "individual," they allege individual actions by the new defendants. When considering state-law claims that fail to specify the capacity in which the claim is brought, Kentucky courts consider whether the allegations themselves are directed towards the individuals. *See McCollum v. Garrett*, 880 S.W.2d 530, 533 (Ky. 1994) (finding that the defendant was sued in his individual capacity despite the complaint's failure to explicitly state as such because the complaint "otherwise state[d] a straightforward claim against [defendant] based upon his individual actions" and "the relevant allegations of misconduct [were] directed at [defendant]"). Here, the claims in the amended complaint allege individual misconduct by each new defendant. At this stage, the Court cannot conclude that the new defendants are sued solely in their official capacities. As a result, it is premature to determine whether they are entitled to absolute immune from liability to the extent they performed "governmental, as opposed to a proprietary, function[s]." *Yanero*, 65 S.W.3d at 519.

Similarly, it is not obvious at this stage that the new defendants would be shielded from liability by qualified immunity. In its limited discussion on this point, BCPS argues simply that "[Nyarko's] claims against the new defendants all involve discretionary functions." [DE 23 at 492]. BCPS does not point to any of Nyarko's actual allegations or explain how the alleged conduct is discretionary. Moreover, BCPS makes no argument with respect to the other prongs of the qualified immunity defense—whether the employees acted in good faith and within the scope of their authority. The party opposing the motion to amend "bears the burden of establishing that the proposed amendment would be futile." *Williams v. Barton Malow Co.*, 581 F. Supp. 3d 923, 928

15

(N.D. Ohio 2022) (quoting *Runser v. City of Dayton*, No. 3:21-CV-160, 2021 WL 5630735, at *2 (S.D. Ohio December 1, 2021)). BCPS's limited argument fails to establish that the proposed amendment would be futile on qualified immunity grounds. Accordingly, the proposed amendment is not clearly futile, and denying leave to amend would be improper. *See Taylor v. Fam. Health Centers, Inc.*, No. 3:25-CV-583-RGJ, 2026 WL 84415, at *4 (W.D. Ky. Jan. 12, 2026) ("If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." (quoting 6 Arthur R. Miller, Mary Kay Kane, and A. Benjamin Spencer, Federal Practice and Procedure § 1487 (3d ed.))).

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS** Nyarko's motion for leave to amend the complaint. [DE 17].

Rebecca Grady Jennings, District Judge
United States District Court

May 26, 2026

16